# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | |
| ) | **2:18-cr-00538-KOB-JHE-1** |
| **CHRISTOPHER A. MCNABB,** ) | |
| ) | |
| **Defendant** ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on the motion of Defendant Christopher A. McNabb ("McNabb" or "Defendant") to suppress evidence seized pursuant to two search warrants, both executed on or about April 30, 2018. (Doc. 13). As discussed below, the undersigned recommends the motion be denied.

### I. Background

#### A. Procedural History

McNabb is charged in a four-count indictment with one count of possessing a firearm as a convicted felon, two counts of receipt and possession of an unregistered firearm,[1] and one count of receipt and possession of explosives. (Doc. 1). On January 25, 2019, McNabb filed a motion to suppress the firearms that form the basis of the indictment on the basis that officers executing a search warrant violated McNabb's Fourth Amendment rights when they exceeded the warrant's scope by searching areas not specified in it. (Doc. 13). The government responded on February

---

[1] Specifically, as discussed further below, McNabb is charged in Count Two with receipt and possession of a Diamondback Arms Model DB-15, .223 Remington caliber firearm, and in Count Three with receipt and possession of an SWD Model M-11, 9mm Luger caliber machinegun. (*See* doc. 1 at 2-3).

15, 2019, attaching a copy of a federal search warrant, (doc. 18-1), and denying the officers exceeded its scope. (Doc. 18).  The undersigned set the matter for an evidentiary hearing. (Doc. 19).

On March 5, 2019, the undersigned held the suppression hearing.  At the hearing, it became apparent that the parties' understanding of the factual circumstances surrounding the search diverged sharply.  The government clarified that the search was actually executed in two stages, the first pursuant to a federal search warrant and the second pursuant to a state search warrant.  The government contended the actual facts of the matter were immaterial because McNabb had not met his burden to show a violation of his Fourth Amendment rights, but the undersigned reset the evidentiary hearing and ordered supplemental briefing on three issues: (1) which warrant or warrants McNabb intended to challenge; (2) which specific portions of the search McNabb challenged; and (3) McNabb's standing as to each portion of the search he challenged. (Doc. 24). The parties submitted supplemental briefing, (docs. 25 & 26), and the undersigned held the second evidentiary hearing on April 15, 2019.

### B. Facts

A confidential informant told detectives from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that McNabb, a felon, was in possession of firearms in violation of 18 U.S.C. § 922(g). (Doc. 26-1; tr. 9).  Acting on that tip, ATF Agent Ryan McGowan applied for a federal search warrant in this district on April 27, 2018. (Doc. 26-1).  Attachment A to the warrant application described the premises to be searched as "the residence located at the end of McNabb Road Southwest, Leeds, Alabama 35094, and believed to have the street address 270 McNabb Road Southwest, Leeds, Alabama 35094." (*Id.* at 16).  The application further identifies the premises with a description—"a single-story building with an exterior composed of off-white vinyl

2

siding. The residence has a front and back porch, and a blue tarp covers the back of the roof. There is a driveway to the left and a power line in the front towards the road."—and photographs. (*Id.* at 16-17). Attachment B to the application identified the description of items to be seized as:

1. Indicia of occupancy, residency, and/or ownership of the premises, including but not limited to utility and telephone bills, and keys to the residence.

2. Firearms, ammunition, and property pertaining to firearms, including ammunition packaging, containers, labels, receipts, gun cases, ammunition magazines, ammunition components, shell casings, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, and receipts for the purchase, sale, or repair of any of these items.

3. Documents relating to the possession, sale, receipt, purchase, or barter of firearms or ammunition or property pertaining to firearms, as described in paragraph 2 above.

(*Id*. at 28). A magistrate judge in this district authorized the warrant on April 27, 2018, finding probable cause to search the premises identified in Attachment A for the items described in Attachment B. (Doc. 26-1 at 1, 5-7).

On April 30, 2018, ATF agents executed the search warrant. (Tr. 10). Because McNabb had an outstanding state arrest warrant for unlawful possession of a controlled substance, ATF also enlisted officers from the Jefferson County Sheriff's Office ("JCSO"). (Tr. 10). During the search of the main residence, the officers discovered McNabb's bedroom and seized a number of firearms, three shock tube explosive detonators, and ammunition. (Doc. 26 at 3-4; tr. 12-13). ATF Special Agent Kris Brantley testified that an individual who came out of McNabb's bedroom informed the officers that McNabb was asleep in a log cabin outbuilding close to the house.[2] (Tr. 10). Pursuant

---

[2] Conflicting with Brantley's testimony, a JCSO arrest information sheet indicated McNabb "was inside the residence upon arrival." (Def. Exh. 3). Agent Brantley testified this was

to the state arrest warrant, the officers entered the outbuilding and took McNabb into custody. (Tr. 10).

In the course of the arrest, the officers observed a glass pipe, commonly used to smoke methamphetamine, in plain view. (Tr. 10). Because the federal warrant covered only firearms, the officers then sought a state search warrant for controlled substances and allegedly related materials, including "[f]irearms which are readily accessible for use as protection of the trafficker . . . ." (Doc. 26-2; tr. 10). A judge in the Circuit Court of Jefferson County, Alabama authorized the search warrant at 8:28 a.m. on April 30, 2018. (Doc. 26-2 at 3). Relying on the state search warrant, the officers searched the outbuilding and discovered firearms and ammunition, including the Diamondback Arms Model DB-15 firearm identified in Count Two of the indictment and the SWD Model 11 machinegun identified in Count Three of the indictment. (Tr. 10, 13-14). Agent Brantley testified that, acting out of an abundance of caution due to the state search warrant's ostensible focus on narcotics, the officers obtained consent from McNabb and two other occupants of the main residence (Tina McNabb and Barry McNabb) to seize the items. (Tr. 10, 14).

The specific items seized were described on a JCSO return and inventory form. (*Id.* at 5-6). According to the form, the search warrant was executed at 8:00 a.m. on April 30, 2018. (*Id.* at 5). Documents prepared by the JCSO indicate a house, approximately ten cars, two sheds, two campers, and a trailer were searched. (Def. Exhs. 3 & 5).

---

incorrect, (tr. 23), and neither the JCSO incident report, (Def. Exh. 5), nor the ATF report of investigation, (Def. Exh. 6), support that McNabb was inside the residence.

4

## II. Analysis

McNabb purportedly challenges both the search pursuant to the federal warrant and the search pursuant to the state warrant. (Doc. 25).[3]

### A. Standing

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Whren v. United States*, 517 U.S. 806, 809 (1996). However, to challenge the reasonableness of a search or seizure, a defendant must have standing to do so. *United States v. Eyster*, 948 F.2d 1196, 1208–09 (11th Cir. 1991). To establish standing, a defendant must have a "reasonable expectation of privacy in the invaded place," *Rakas v. Illinois*, 439 U.S. 128, 143 (1978), and that expectation must be both objectively reasonable, *Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010), *aff'd,* 566 U.S. 356 (2012) (citations omitted). Accordingly, a defendant must show "(1) that he manifested a subjective expectation of privacy in the item searched or seized, and (2) a willingness by society to recognize that expectation as legitimate." *Id.* (internal quotation marks and citations omitted). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. The burden to establish

---

[3] As discussed above, McNabb's actual motion to suppress, (doc. 13), is based on the parties' initial confused understanding of the facts. Although it references both the federal and state search warrants, it challenges the fact some of the firearms were found in a building other than the residence (the only area the federal warrant contemplates searching, (*see* doc. 26-1 at 5)). (*See id.*). Since the state search warrant is also at issue, McNabb's supplement, (doc. 25), which discusses his challenges to the state warrant, is a better indication of the actual arguments he advances to support suppression.

standing falls to the defendant. *Id.* at 130 n.1; *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997).

The government concedes McNabb has standing to challenge the search and seizure of the firearms in his bedroom pursuant to the federal search warrant, but denies McNabb had any expectation of privacy in the log cabin where he was arrested and where the firearms identified in Counts Two and Three were discovered pursuant to the state search warrant. (Doc. 26 at 7-8). McNabb's only argument to support standing is that he was sleeping in the cabin, and thus his expectation of privacy was legitimate. (*See* tr. 40). While this might conceivably show McNabb expected to be left alone while asleep in the cabin (although no evidence establishes this), arguably supporting a subjective expectation of privacy, McNabb offers nothing to connect himself to the cabin at all to support that his expectation was reasonable.

In fact, the only evidence offered by McNabb that goes to his expectation of privacy at all is a 2017 building permit for 270 McNabb Road, indicating the owner of the property is David Walker, (Def. Exh. 10), and a 2019 tax assessment record of 270 McNabb Road, indicating the owner of the property is Edward L. McNabb, (Def. Exh. 11). McNabb's counsel offered these two exhibits for their indications that 270 McNabb Road is not owned by McNabb. (Tr. 36-37). Although "legal ownership is not a prerequisite for a legitimate expectation of privacy," *United States v. Garcia*, 741 F.2d 363, 365–66 (11th Cir. 1984) (citing *Jones v. United States,* 362 U.S. 257 (1960)), ownership is a factor which may be considered weighing against standing. *United States v. Ramos*, 12 F.3d 1019, 1023 (11th Cir. 1994) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 105 (1980)). And an explicit disavowal of ownership is a strong indication of a lack of reasonable expectation of privacy in the disclaimed area or item. *See, e.g., United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991) (holding "temporary access to premises" was insufficient to

establish standing when coupled with defendants' "explicit disclaimer of ownership or interest"); *United States v. Jones*, 184 F. App'x 943, 947 (11th Cir. 2006) (defendant's denial he lived at residence undermined his standing to contest evidence seized there); *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982) (collecting cases).  With nothing to support how McNabb had access to the cabin, or how often, or why he was there in the first place, the only evidence before the court is that (1) McNabb was asleep in the cabin and (2) McNabb does not own the cabin.  That is not enough to show standing.  *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("one who is merely present with the consent of the householder" lacks Fourth Amendment standing).  Consequently, McNabb has not carried his burden to demonstrate standing to object to the search of the cabin pursuant to the state search warrant, and his motion is due to be denied as to the firearms identified in Counts Two and Three.

## B. Constitutional Violation

Standing issues aside, McNabb has also failed to demonstrate that either search was invalid. When a search is conducted pursuant to a warrant, the burden is on the defendant to show the warrant was invalid or was invalidly executed.  *United States v. Lockett*, 533 F. App'x 957, 965 (11th Cir. 2013) (citing *United States v. Osborne,* 630 F.2d 374, 377 (5th Cir.1980));[4] *United States v. Vigo*, 413 F.2d 691, 693 (5th Cir. 1969).   McNabb does not point to a defect in the substance of either warrant that would call into question either search.  He does not challenge, for example, the validity of the statements in the affidavits accompanying the warrant applications,[5]

---

[4] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).
[5] *See Franks v. Delaware*, 438 U.S. 154 (1978).

the sufficiency of the affidavits to support probable cause for the warrants,[6] the reliability of the confidential informant supporting the federal warrant,[7] or whether the warrants were sufficiently particular.[8]

Nor does McNabb directly challenge the execution of either warrant. He says nothing at all about the federal warrant, but points to several inconsistencies between the state warrant and other case-related documents. (*See* doc. 25 at 3-4). The first of these inconsistencies is that, as stated above, the state search warrant was issued at 8:28 a.m. and, according to the JCSO return and inventory form, executed at 8:00 a.m. There was neither testimony nor other evidence to support that the search actually preceded the warrant; instead, Agent Brantley testified that, after seeing the methamphetamine pipe, officers waited for the search warrant to be signed prior to further searching the outbuilding. (Tr. 10). In the absence of such evidence, the inconsistent times appear more likely the result of a clerical error, which is not a defect in the warrant itself and does not support suppression of the evidence. *See, e.g., United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971) (declining to suppress evidence when officers failed to return and file the warrant on the basis this noncompliance was "ministerial and does not affect the validity of the search"). *Cf. United States v. Henry*, 939 F. Supp. 2d 1279, 1290 (N.D. Ga. 2013) (suppression unwarranted for a violation of Fed. R. Crim. P. 41(f)'s inventory and return requirements; violations were "ministerial," and justify suppression only when defendant demonstrates prejudice or that noncompliance with the rule was intentional or in bad faith). McNabb also points to JCSO

---

[6] *See Massachusetts v. Upton*, 466 U.S. 727 (1984).
[7] *See Illinois v. Gates*, 462 U.S. 213 (1983).
[8] *See Groh v. Ramirez*, 540 U.S. 551 (2004).

statements indicating that ten cars, two sheds, two campers, and a trailer were searched in addition to the house. (Doc. 25 at 4; Def. Exhs. 3 & 5). Although McNabb states this is a "vexing" issue and that this expanded search was unauthorized by the warrant, he does not argue the firearms he seeks to suppress were seized outside the warrant's scope.[9] *See United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007) ("Total suppression of all items seized [pursuant to a warrant], including items within a warrant's scope, is not appropriate unless the executing officers' conduct 'exceeded any reasonable interpretation of the warrant's provisions.'"); *United States v. Holmes*, 505 F.3d 1288 (D.C. Cir. 2007) (a defendant seeking suppression must show "a causal nexus between the Fourth Amendment violation and the evidence he seeks to suppress"). Finally, McNabb points to a discrepancy between the seven adults and one child described in the Jefferson County Sheriff's Office search warrant narrative as present in the residence and the three people alleged by Agent Brantley to have been there. (Doc. 25 at 4; Def. Exh. 4). However, McNabb never articulates how this discrepancy supports suppression. At best, these inconsistencies muddy the waters; they do not, on their own, demonstrate constitutional violations. Since the burden is on McNabb, this is fatal to his motion.

---

[9] Even if McNabb connected the allegedly expanded search to the firearms, McNabb provides no information at all about the cars, the sheds, the campers, or the trailer such that he could meet his burden to demonstrate that searching them exceeded the state search warrant's scope. The affidavit in support of the state search warrant states 270 McNabb Road—the place to be searched, as stated in the warrant, (doc. 26-2 at 3)—is "best described as a one story residence, single family dwelling with multiple out-buildings and vehicles on the property." (Doc. 26-2 at 2). Although the affidavit is not necessarily part of the warrant, *see Groh*, 540 U.S. at 557, McNabb does not argue the state warrant is insufficiently particular such that its recitation of the address as the place to be searched did not include all the areas allegedly searched, which seem to have been the "out-buildings and vehicles" described in the application. And, in any event, McNabb still has the obligation to establish standing to contest whichever portions of the allegedly expanded search he deems unconstitutional, which he does not attempt to do for anything beyond the log cabin.

Even assuming McNabb had standing to challenge the search authorized by the state warrant, he has not shown a constitutional violation has occurred in the issuance or execution of either search warrant.[10] Accordingly, his motion is due to be denied.

### III. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** McNabb's motion to suppress, (doc. 13), be **DENIED**.

### IV. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions

---

[10] At the suppression hearing, McNabb also challenged whether the consent form, (Def. Exh. 9), was sufficient to provide the basis for a consent search, in light of the alleged involuntariness of McNabb's consent due to the duress McNabb was allegedly under. (Tr. 42). Leaving aside the issue of voluntariness, the government does not allege the search could be justified as a consent search; instead, Agent Brantley testified the consent form was intended to authorize seizure of the firearms, (tr. 14-15, 31-32). Whether the form is sufficient to establish McNabb's voluntary consent and a search of the property premised on that consent is immaterial, and McNabb does not otherwise argue the seizure of the firearms was unconstitutional.

adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review de novo those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE this 23rd day of April, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE